In re MITCHELL TRUCKING COMPANY, INC., Debtor,

Gary M. GROWE, Trustee of the Debtor's Estate of Mitchell Trucking Company, Inc., Plaintiff and Counterclaim Defendant,

v.

MALDEN MILLS INDUSTRIES, INC., Defendant and Counterclaimant,

Gary M. GROWE, Trustee of the Debtor's Estate of Mitchell Trucking Company, Inc., Plaintiff,

v.

FORSTER MANUFACTURING COMPANY INC., Defendant,

Gary M. GROWE, Trustee of the Debtor's Estate of Mitchell Trucking Company, Inc., Plaintiff,

v.

FRASER PAPER, LIMITED, Defendant.

Bankruptcy No. 91–10051.
Civ. No. 93–0059–B.

United States District Court, D. Maine.

April 30, 1993.

---

Paul O. Taylor, Harris & Taylor, Bloomington, MN, Gary Growe, Bangor, ME, for plaintiffs.

John O'Leary, Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Portland, ME, Joseph Michael Roberts, Grove, Jaskiewicz and Cobert, Washington, DC, for defendants.

## ORDER AND MEMORANDUM OF OPINION

BRODY, District Judge.

This matter is before the Court on consolidated defendants Fraser Paper, Ltd., Forster Manufacturing Company, Inc. and Malden Mills Industries, Inc.'s ("Defendants") Motions to Dismiss or, alternatively, for Summary Judgment against plaintiff Gary M. Growe, trustee of the debtor's estate of Mitchell Trucking Company, Inc. ("Plaintiff" or "Trustee"). In order to accommodate out of state counsel, a telephonic hearing was held on the record on April 28, 1993.

Plaintiff seeks to recover alleged freight undercharges for interstate transportation services performed for the defendants by Mitchell Trucking Company, Inc. ("Mitchell"). Defendants contend that the tariff rates sought by plaintiff were ineffective due to Mitchell's failure to properly file the mileage rates with the Interstate Commerce Commission ("ICC"). The Court concludes that Mitchell's filed tariff rates were ineffective and void as a matter of law. Accordingly, Defendants' Motions for Summary Judgment are *GRANTED*.[1]

## I. BACKGROUND

The Revised Interstate Commerce Act, 49 U.S.C. §§ 10101, *et seq.*, requires carriers to publish and file with the ICC tariffs containing the carrier's transportation rates. 49 U.S.C. § 10762(a). The rates, charges, rules and regulations governing Mitchell's transportation services were maintained in published tariffs on file with the ICC. Mitchell's tariff Nos. 5000 and 5000A, Item 50 set forth the mileage rates applicable in this case.

Mitchell filed for Chapter 11 bankruptcy protection on January 18, 1991. In December, 1992, Bankruptcy Judge Haines entered an order retaining Interstate Audit Corporation ("IAC") to conduct an audit of Mitchell's freight bills. Judge Haines asked IAC to determine whether Mitchell's bills were rated in accordance with the tariffs on file with the ICC. If IAC determined that balances were due to Mitchell for improper tariff charges, Judge Haines instructed the IAC to bill and attempt collection of the deficiency on behalf of the trustee.

IAC determined that the three defendants underpaid Mitchell. It then unsuccessfully sought to collect the difference between what Mitchell originally billed and what was prescribed by the tariffs on file with the ICC. This undercharge purportedly totals approximately $650,000. On January 13, 1993, plaintiff filed actions in the bankruptcy court against the three defendants. On March 16, 1993, this Court granted defendants' unopposed Motions to Withdraw Reference and consolidated the three cases.

Defendants' assert that the mileage rates that plaintiff now seeks to apply for collection purposes were not properly on file with the

---

1.  In light of the Court's action on summary judgment, the Motions to Dismiss are moot.

**34**

ICC. Accordingly, defendants argue that the tariff was void upon filing and that plaintiff cannot now collect a rate that is higher than the original, individually contracted rates.

## II. SUMMARY JUDGMENT STANDARD

■ Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a ·matter of law." Fed.R.Civ.P. 56(c). The Court views the entire record "in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir.1990).

## III. DISCUSSION

■ Plaintiff's effort to recover freight charges from the defendants has its legal basis in the "filed rate doctrine." This doctrine seeks to stabilize prices and halt discriminatory pricing by requiring regulated motor carriers to charge the tariff rates filed with the ICC, regardless of any separate agreements that carriers may strike with shippers. *Maislin Industries U.S., Inc. v. Primary Steel, Inc.*, 497 U.S. 116, 128, 110 S.Ct. 2759, 2767, 111 L.Ed.2d 94, 109 (1990). The doctrine is rooted in the Interstate Commerce Act which states that a carrier may provide transportation "only if the rate . . . is contained in a tariff that is in effect" under the law. 49 U.S.C. § 10761(a) (1988). The carrier "may not charge or receive a different compensation for that transportation or service than the rate specified in the tariff." *Id.*

■ The Interstate Commerce Act grants the ICC power to "prescribe the form and manner of publishing, filing, and keeping tariffs open for public inspection." 49 U.S.C. § 10762(b)(1). These specific rules and regulations are set forth in 49 C.F.R. Part 1312. Included are regulations for properly filing mileage rates. Mileage rates consist of two parts: (1) the rate per mile; and (2) the distance between the origin and destination.

*Jasper Wyman and Son, et al. re: Overland Express, Inc.*, ICC Case No. 40150, 8 I.C.C.2d 246, 248 (1992). All parties agree that while Mitchell properly complied with the first part of this requirement, it failed to comply with the distance requirement. The dispute arises over the effect of this failure.

■ The ICC provides three methods for establishing mileage measurements in tariffs. 49 C.F.R. Part 1312.30(c). A carrier must follow one of these three methods for the mileage rate to be effective. First, the carrier may publish the actual distances between all locations covered by the rates. 49 C.F.R. Part 1312.30(c)(i). Second, the carrier may refer to a map which governs mileage and is attached to the same tariff in which the rates are published. 49 C.F.R. Part 1312.30(c)(ii). Third, the carrier may refer to a separately filed distance guide tariff. 49 C.F.R. Part 1312.30(c)(iii).

■ Mitchell attempted to employ the third method of establishing an effective rate by referring to the Household Goods Carriers' Bureau Mileage Guide ("Mileage Guide") for mileage measurements. It failed, however, to adhere to the ICC's regulations. 49 C.F.R. § 1312.4(d) states the following:

A carrier may not participate in a tariff issued in the name of another carrier or an agent unless a power of attorney or concurrence has been executed. Absent effective concurrences or powers of attorney, tariffs are void as a matter of law.

Mitchell did not properly "participate" in the Mileage Guide because it failed to properly file a concurrence or power of attorney.

Plaintiff asserts that, despite the failure to follow ICC regulations, the Court has no power to retroactively void the tariff. This argument misses the point. By failing to follow ICC regulations, there was no effective tariff on file. Mitchell's failure to file a concurrence or power of attorney rendered the tariff void from the outset. This issue was addressed in *Security Services Inc. v. P–Y Transportation, Inc.*, Case No. 1:91CV2192, 1992 WL 494608 (N.D.OH Aug. 26, 1992):

Plaintiff argues that § 1312.4(d) is invalid because the ICC has no power to retroactively reject a tariff once it has become effective. However, plaintiff's tariff is not being retroactively rejected. Section 1312.4(d) provides that a tariff is *void* absent an effective concurrence or power of attorney. The word "void" is commonly understood to mean "ineffective" or "null." Thus, plaintiff's tariff was never effective, it was not retroactively rejected after it became effective.

> *Security Services, Inc.*, Case No. 1:91CV2192 at 3 (citation omitted) (emphasis in original).

Proper filing of the mileage rate required Mitchell to publish both the rate per mile and the number of miles. During the period in question, Mitchell had the former on file but not the latter. Mitchell could have corrected this situation through one of the three procedures set forth in 49 C.F.R. § 1312.4(d). It attempted to follow ICC regulations by incorporating the Mileage Guide by "reference". However, it failed to do so properly because no concurrence or power of attorney was executed.

> The Commission rules have long stated that a carrier participates in ("files") the rates of another carrier only through the concurrence or power of attorney process. This requirement is significant enough that since 1984, the Commission's regulations have reminded carriers that absent concurrences or powers of attorney, their tariffs are void as a matter of law.

*Jasper Wyman*, 8 I.C.C. at 260.

This position was examined by the Eighth Circuit in *Atlantis Express, Inc. v. Associated Wholesale Grocers, Inc.*, 989 F.2d 281 (8th Cir.1993). *Atlantis* directs us toward the same conclusion.

> We reject the notion that a tariff is "effective" merely because the ICC accepts and publishes a distance rate. In the absence of distances to accompany distance rates, there simply is no tariff on file, notwithstanding the ICC's acceptance and publication of the rates. The rates are meaningless without the distances.

989 F.2d at 283.

As was the case in *Jasper Wyman* and *Atlantis*, plaintiff seeks to have the defendants pay Mitchell's "filed" rate when it is impossible to calculate the rate from the information properly on file with the ICC. "A carrier that seeks to enforce a 'filed' rate must be prepared to show that it has done what the regulations of the ICC require for effective filing." *Atlantis*, 989 F.2d at 284. Mitchell has failed to do so, therefore, plaintiff may not now seek enforcement of the improperly filed rate.[2]

The Supreme Court has recently held that "judicial deference to reasonable interpretations by an agency of a statute that it administers is a dominant, well-settled principle of federal law." *Nat'l R.R. Passenger Corp. v. Boston & Me. Corp.*, —— U.S. ——, ——, 112 S.Ct. 1394, 1401, 118 L.Ed.2d 52 (1992). This is consistent with the Supreme Court's earlier holding in *Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

The Interstate Commerce Act charges the ICC with authority to prevent secret negotiations and arrangements between carriers and

---

**2.** Plaintiff relies heavily on the Supreme Court's decision in *Interstate Commerce Comm'n v. Am. Trucking Assos., Inc.*, 467 U.S. 354, 104 S.Ct. 2458, 81 L.Ed.2d 282 (1984), for the proposition that the ICC cannot void Mitchell's already filed tariff. Plaintiff's reliance on *American Trucking* is misplaced. Contrary to plaintiff's assertion, *American Trucking* supported the right of the ICC to retroactively reject filed tariffs. Although rejection of effective tariffs is a form of remedial power not expressly delegated to the Commission, the Supreme Court held that it was within the ICC's discretion in limited instances. "To lie within the Commission's discretionary power, the proposed remedy must satisfy two criteria: first, the power must further a specific statutory mandate of the Commission, and second, the exercise of power must be directly and closely tied to that mandate." *American Trucking*, 467 U.S. at 367, 104 S.Ct. at 2465–66.

*American Trucking*'s two-step test has been applied to deny debtors' efforts to recover undercharges in cases very similar to the one before this Court. *See Freightcor Services, Inc. v. Vitro Packaging, Inc.*, 969 F.2d 1563 (5th Cir.1992); *Security Services, Inc. v. P–Y Transportation, Inc.*, Case No. 1:91CV2192 (N.D.OH Aug. 26, 1992). However, because we determine that Mitchell's improper filing rendered the tariff ineffective from the very beginning, the *American Trucking* test is not applicable.

shippers. As part of its mandate to provide a fair and efficient marketplace, "the Commission is specifically under a statutory mandate to determine what information must be provided in every joint tariff and provide mechanisms to ensure that this information is provided and is accurate." *Freightcor Services,* 969 F.2d at 1571. Requiring the disclosure of every carrier participating in a tariff is a reasonable interpretation of this statutory mandate.

 Finally, plaintiff argues that, in the event the Court holds the tariff void, the Court should remand the case to the ICC to determine the reasonable rate to which Mitchell is entitled. This argument was not previously raised and defendants assert that, having previously agreed to a contracted price, Mitchell cannot now argue that the price was unreasonable. Absent an effective, legally-filed rate, the Court sees no basis for plaintiff's assertion that the initial contract, freely entered into by both parties, is unreasonable. For these reasons, the Court denies the requested referral to the ICC.

## IV. CONCLUSION

The mileage rates that plaintiff seeks to enforce were not properly on file with the ICC. Mitchell's failure to execute either a concurrence or a power of attorney rendered the tariff void as a matter of law *ab initio.* Because Mitchell never had an effectively filed tariff, debtor's trustee cannot now use the tariff as the basis for freight undercharge claims against defendants. Accordingly, defendants' Motions for Summary Judgment are hereby GRANTED. Pursuant to an unopposed motion by defendant Malden Mills Industries, Inc., Malden Mills' Counterclaim is DISMISSED.

SO ORDERED.